1
2 **WO**
3
4
5
6 ## IN THE UNITED STATES DISTRICT COURT
7 ## FOR THE DISTRICT OF ARIZONA
8

| | |
|---|---|
| 9 Samantha J. West, | No. CV-21-08099-PCT-JJT |
| 10      Plaintiff, | **ORDER** |
| 11 v. | |
| 12 Commissioner of Social Security Administration, | |
| 13 | |
| 14      Defendant. | |

15      At issue is the denial of Plaintiff Samantha J. West's Application for Disability

16 Insurance Benefits by the Social Security Administration ("SSA") under the Social Security

17 Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review

18 of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 19, "Pl. Br."),

19 Defendant Social Security Administration Commissioner's Answering Brief (Doc. 20, "Def.

20 Br."), and Plaintiff's Reply (Doc. 21, "Reply"). The Court has reviewed the briefs and

21 Administrative Record (Doc. 16, "R.") and now affirms the Administrative Law Judge's

22 decision (R. at 15–29) as upheld by the Appeals Council (R. at 1–6).

23 **I.      BACKGROUND**

24      Plaintiff filed an application for Title II Disability Insurance Benefits on October 1,

25 2016, for a period of disability beginning November 20, 2014. (R. at 18.) Plaintiff's claim

26 was denied initially on August 8, 2017, and upon reconsideration on December 20, 2017.

27 (R. at 18.) On August 15, 2019, Plaintiff testified at a hearing held before an Administrative

28 Law Judge ("ALJ"). (R. at 18, 57–97.) After expert interrogatories were proffered, the ALJ

1    held a supplemental hearing at Plaintiff's request which took place on April 24, 2020. (R.

2    at 18, 40–56.) Upon considering the medical records, opinions, and testimony, the ALJ

3    denied Plaintiff's application on June 10, 2020. (R. at 29.)

4            The ALJ found that Plaintiff did not engage in substantial gainful activity from her

5    alleged onset date of November 20, 2014 through her date last insured of December 31,

6    2018. (R. at 21.) The ALJ further determined that Plaintiff had the following severe

7    medically determinable impairments ("MDIs"): migraines, degenerative disc disease,

8    spinal cord syrinx, kyphotic exaggeration, chiari malformation, asthma, fibromyalgia,

9    pseudo-seizures, lupus, Raynaud's syndrome, post-traumatic stress disorder, cognitive

10   impairment, depression, anxiety, and mood disorder. (R. at 21.) The ALJ also found the

11   following non-severe impairments: obesity, gastroesophageal reflux disease, and Sjogren's

12   syndrome. (R. at 21.) However, the ALJ determined that the impairments did not meet or

13   medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart

14   P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). The ALJ then considered Plaintiff's

15   residual functional capacity ("RFC") (R. at 23) and determined that although Plaintiff was

16   unable to perform any past relevant work, Plaintiff "was capable of making a successful

17   adjustment to other work that existed in significant numbers in the national economy."

18   (R. at 28.) The Court has reviewed the evidence in the record and will discuss the pertinent

19   medical evidence in addressing the issues raised by the parties.

20   **II.    LEGAL STANDARD**

21           In determining whether to reverse an ALJ's decision, the district court reviews only

22   those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503,

23   517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability

24   determination only if the determination is not supported by substantial evidence or is based

25   on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is

26   more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable

27   person might accept as adequate to support a conclusion considering the record as a whole.

28   *Id.* (citation omitted). To determine whether substantial evidence supports a decision, the

Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. (citation omitted). Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity ("RFC") and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

## III.   ANALYSIS

The issues before the Court for review are: (1) whether the ALJ erred at step two in determining Plaintiff's severe MDIs; (2) whether the ALJ erred at step three by failing to determine that the impairments met or medically equaled an impairment listed in Appendix

1 to Subpart P of 20 C.F.R. Part 404; (3) whether the ALJ erred at step four in evaluating

2 the medical opinions; and (4) whether the ALJ erred in unfairly evaluating Plaintiff's

3 testimony.[1]

### A.    The ALJ Properly Determined Severe MDIs.

5    At step two, the ALJ determines whether Plaintiff has any severe MDIs. 20 C.F.R.

6 § 404.1520(a)(4)(ii). "Step two is merely a threshold determination meant to screen out

7 weak claims." *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) (citation omitted).

8 Plaintiff argues that the ALJ erred by failing to categorize the following conditions as

9 severe MDIs: autonomic neuropathy, trigeminal neuralgia, traumatic brain injury (TBI),

10 and Sjogren's syndrome. (Pl. Br. at 9.) Because the ALJ did not "screen out" Plaintiff's

11 claim at this step, however, there is no harmful error. *See Molina v. Astrue*, 674 F.3d 1104,

12 1115 (9th Cir. 2012) (defining harmless error as an error that does not affect the ALJ's

13 nondisability determination).

### B.    The ALJ Properly Considered All MDIs.

15    In her Opening Brief, Plaintiff also questions whether the ALJ properly considered

16 her MDIs at step three. At step three, the ALJ considers whether Plaintiff's impairments

17 meet or medically equal an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part

18 404. 20 C.F.R. § 404.1520(a)(4)(iii). First, Plaintiff argues that the ALJ failed to consider

19 autonomic neuropathy and trigeminal neuralgia in his assessment. (Pl. Br. at 9.) To show

20 harmful error, Plaintiff must demonstrate that these conditions resulted in functional

21 limitations that the ALJ failed to consider at step four. *See Lewis v. Astrue*, 498 F.3d 909,

22 911 (9th Cir. 2007) (holding that ALJ did not err by failing to consider an impairment at

23 step two because the ALJ considered any limitations posed by that MDI in step four); *See*

24 *also, e.g.*, *Hurn v. Saul*, 798 F. App'x 976, 978–79 (9th Cir. 2019) ("Although the ALJ did

25 not expressly mention Dr. Ta's tentative diagnosis of fibromyalgia, Dr. Ta did not assign

26 any functional limitations stemming from his diagnosis."). Plaintiff has not shown any

---

[1] Plaintiff also suggests that the case should be remanded because the Appeals Council failed to consider the brief filed on April 29, 2021. (Pl. Br. at 8.) Plaintiff has not provided any legal authority to support remanding the case on this ground.

1    evidence of functional limitations resulting from the conditions that the ALJ failed to

2    consider. There is no harmful error.

3         Second, Plaintiff argues that the ALJ failed to consider TBI. (Pl. Br. at 9.) The ALJ

4    wrote that while TBI is mentioned in the record, "the record does not establish [it] as [a]

5    medically determinable impairment[]." (R. at 21.) The ALJ provided substantial evidence

6    supporting this finding, pointing out that there were no objective findings associated with

7    the TBI diagnosis. (R. at 21.) There is no error in the consideration of this impairment.

8         Third, Plaintiff argues that the ALJ failed to properly consider Sjogren's syndrome.

9    (Pl. Br. at 9.) The ALJ categorized Sjogren's syndrome as a non-severe impairment and

10   cited to multiple doctors' visits from November 2016 through October 2017 to show that

11   this condition did not cause significant functional limitations for twelve consecutive

12   months. (R. at 21 (citing R. at 1286, 1321, 1527, 1654, 1885).) The ALJ provided

13   substantial evidence for his reasoning and did not err in his consideration of this

14   impairment.

15        Finally, Plaintiff argues that the ALJ erred by failing to determine that Plaintiff met

16   listings 12.02, 12.04, 12.06, 12.07, and 12.15. (Pl. Br. at 10.) To support this claim, Plaintiff

17   points to Dr. Amy Knapp's findings of two marked limitations in her evaluation dated

18   September 19, 2017. (Pl. Br. at 9 (citing R. at 1559–60).) Dr. Knapp found marked

19   limitations in (1) "the ability to carry out detailed instructions," and (2) "the ability to

20   complete a normal workday and workweek without interruptions from psychologically

21   based symptoms and to perform at a consistent pace without an unreasonable number and

22   length of rest periods." (R. at 1559–60.) The ALJ gave little weight to these findings of

23   marked limitations. (R. at 26.) The Court finds that the ALJ provided sufficient and

24   supported reasons for giving little weight to this part of the opinion, as the Court discusses

25   further below. It follows, then, that the ALJ did not err in failing to find that Plaintiff's

26   impairments met or medically equaled a listing.

27   . . .

28

- 5 -

**C.      The ALJ Provided Specific and Legitimate Reasons Supported by Substantial Evidence in Evaluating the Medical Opinions.**

Plaintiff challenges the ALJ's evaluation of three medical opinions in the record. The ALJ gave little weight to the opinions of treating physicians Dr. Amy Knapp (R. at 1559–62) and Dr. Rahmat Afrasiabi (R. at 1577–84) and gave partial weight to examining physician Dr. Robert Gordon's opinion (R. at 1524–35). An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (citing *Lester v. Chater*, 81 F.3d 821, 830–31 (9th Cir. 1996)). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record." *Id.*

**1.      Dr. Knapp**

Plaintiff contends that the ALJ should have given weight to Dr. Knapp's two findings of marked limitations, as discussed above. The ALJ gave little weight to the findings, writing that they were "generally inconsistent with the evidence," specifically with Dr. Knapp's own evaluation of Plaintiff in January 2017. (R. at 26.) The ALJ cited to Dr. Knapp's clinical impressions, which state that Plaintiff had "intact cognitive functioning" and areas of decline and disruption that were "not significantly" impaired. (R. at 26 (citing R. at 1861).) The ALJ also highlighted Dr. Knapp's report that Plaintiff remained "largely independent in basic and instrumental activities of daily living." (R. at 26 (citing R. at 1858).)

To rebut the findings of inconsistency, Plaintiff argues that Dr. Knapp's findings are consistent with the findings of medical advisor Dr. Faren Akin, who relied on Dr. Knapp's findings. (Pl. Br. at 10.) However, the ALJ only gave Dr. Akin's opinion partial weight, explaining that the provider's conclusions regarding concentration and adaptation were too uncertain because Dr. Akin failed to adequately review Dr. Knapp's evaluation. (R. at 26.) The ALJ provided specific and legitimate reasons for giving little weight to Dr. Knapp's findings and did not err in his evaluation of these findings.

### 2.    Dr. Afrasiabi

Plaintiff argues that the ALJ failed to give controlling weight to the RFC assessment completed by Dr. Rahmat Afrasiabi on October 4, 2017. (Pl. Br. at 12 (referencing R. at 1577–84).) In his assessment, Dr. Afrasiabi determined that Plaintiff was limited to lifting or carrying less than ten pounds, standing or walking for less than two hours in a normal workday, and sitting less than six hours in a normal workday. (R. at 1578.) To support these conclusions, Dr. Afrasiabi cited to his notes from an evaluation that same day. (R. at 1563–76.)

The ALJ gave little weight to this assessment. (R. at 25.) First, the ALJ explained that the signature on the assessment is illegible. (R. at 25.) The Court does not agree. When compared with the signature on the treatment notes in the exhibit prior (R. at 1576), it appears that Dr. Afrasiabi signed the assessment. Next, the ALJ wrote that the assessment is inconsistent with the record, which shows "unremarkable imaging, lack of cane use, repeatedly normal gait and Romberg signs, the description of mild or stable conditions, and the repeated observations of the claimant not being in distress or acute distress." (R. at 25.) The ALJ gave partial weight to the opinion of a consultative examiner, Dr. Gordon, "who opined the claimant could perform light exertion with some postural and environmental limitations." (R. at 25 (referencing R. at 1524–34).) The referenced postural and environmental limitations, to which the ALJ gave weight, indicate less severe limitations in standing, walking, and sitting than those described by Dr. Afrasiabi. (R. at 1532.) Dr. Gordon opined that Plaintiff could frequently lift ten pounds and occasionally lift twenty pounds, had the ability to stand or walk six to eight hours in an eight-hour workday, and had the ability to sit six to eight hours in an eight-hour workday. (R. at 1531–32.)

Where the "evidence is susceptible to more than one rational interpretation," the Court must uphold the ALJ's conclusion. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008). Although the legibility of the signature does not support the ALJ's finding, the ALJ provided other sufficient and supported reasons for giving little weight to Dr. Afrasiabi's assessment, including that it is inconsistent with the record.

### 3.  Dr. Gordon

Plaintiff contends that the ALJ failed to provide sufficient reasons for "disregarding" Dr. Gordon's finding regarding migraine headaches. (Pl. Br. at 13.) Dr. Gordon opined that based on the "documented medical records of neurological disorders including migraine headache it is reasonable to believe that [Plaintiff] may suffer from severe fatigue and be unable to complete an 8-hour workday or 40-hour workweek." (R. at 1534.) In its answering brief, Defendant argues that this statement is akin to a determination that Plaintiff is disabled, which is a statement reserved for the Commissioner. (Def. Br. at 9.)

The ALJ gave partial weight to Dr. Gordon's opinion, explaining that while "the conclusion of light exertion is given great weight . . . his finding regarding a cane is not supported by the record and is inconsistent with his own statements." (R. at 25.) Plaintiff does not challenge the part of Dr. Gordon's opinion that was rejected; there is no suggestion that the ALJ disregarded Dr. Gordon's statement about Plaintiff's migraine headaches. Further, because the ALJ categorized migraines as a severe impairment at step two (R. at 21), the fact that the ALJ did not explicitly discuss this finding does not constitute harmful error.

### D.  The ALJ's Evaluation of Plaintiff's Testimony is Supported by Substantial Evidence.

Plaintiff contends that the ALJ unfairly evaluated her testimony. (Pl. Br. at 13.) An ALJ must evaluate whether the claimant has presented objective medical evidence of an impairment "which could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (*en banc*) (internal citations omitted)). In evaluating a claimant's pain testimony, "an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005). The ALJ may "reject the claimant's testimony about the severity of [the] symptoms only by providing

specific, clear, and convincing reasons for doing so." *Brown-Hunter v. Colvin*, 806 F.3d 487, 488–89 (9th Cir. 2015). The ALJ may also consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Lingenfelter*, 504 F.3d at 1040. "Even where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." *Molina,* 674 F.3d at 1113. When daily activities suggest that "later claims about the severity of [the] limitations were exaggerated," they may also be grounds for discrediting claimant testimony. *Valentine v. Comm'r of Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009).

The ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. at 23.) First, the ALJ determined that Plaintiff's alleged impairments in fine motor dexterity were not consistent with a consultative examination in which she had zero problems with her hands. (R. at 23–24 (citing R. at 1528–29).) At that examination, Plaintiff "was observed to freely move both upper extremities without apparent restrictions or limitations including the shoulders, elbows, forearms, wrists, and fingers. . . . Further detailed inspection of the claimant's upper extremities reveals no . . . difficulties performing fine motor movements . . . ." (R. at 1529.) Plaintiff argues that the accommodations for reaching and mobility she had at her job as a pharmacy technician are evidence of fine motor dexterity issues. (Pl. Br. at 14.) However, the ALJ has provided specific, clear, and convincing reasons to support his conclusion on fine motor dexterity.

The ALJ also found that Plaintiff's alleged issues with gait disturbance, standing, balance, and mobility were inconsistent with the record. (R. at 24.) The ALJ cited to multiple examinations in the record where Plaintiff's gait was recorded as normal. (R. at 24.) The ALJ explained that although one doctor gave Plaintiff an order for a walker on October 15, 2018 (R. at 1627), subsequent records do not show that Plaintiff ever actually used a walker. (R. at 24.) The ALJ also cited to an examination in which Plaintiff reported

using a scooter occasionally at the grocery store but performed all the physical examination maneuvers without any assistive devices. (R. at 24 (citing R. at 1532).) These facts contradict Plaintiff's claims of debilitating balance issues. In her Opening Brief, Plaintiff alleges numerous emergency room visits due to falling, citing one fall that resulted in head and neck trauma and one doctor's visit during which she reported balance issues. (Pl. Br. at 13 (citing R. at 1624, 1626).) Plaintiff does not cite a medical opinion indicating she has balance issues, aside from the order she received for a walker. (Pl. Br. at 13 (citing R. at 1622).) The ALJ has provided specific, clear, and convincing reasons showing that Plaintiff's reports of imbalance are inconsistent with the record.

The ALJ found that evidence in the record did not support the extent of Plaintiff's pain allegations or mental allegations. (R. at 24.) Plaintiff does not provide medical evidence to rebut either of these findings. The ALJ provided clear and convincing reasons for rejecting Plaintiff's testimony in both respects. Regarding pain allegations, the ALJ explained that although the tender points establish fibromyalgia, this condition was described as mild on multiple occasions, as was imaging of the lumbar spine and cervical spine. (R. at 24.) Plaintiff was also described as being in no distress or no acute distress as multiple points in the record. (R. at 24.) Regarding mental allegations, the ALJ wrote that Plaintiff received "very little specialized mental health treatment," has denied memory loss on multiple occasions, and was found to have only mild cognitive impairment. (R. at 24.) Plaintiff's memory and attention were also observed to be normal. (R. at 24.) The ALJ has provided specific, clear, and convincing reasons to support his findings in these areas.

Finally, the ALJ found that Plaintiff's "activities of daily living are greater than one would expect given the claimant's complaints of disabling symptoms and limitations." (R. at 24.) The ALJ may consider "'whether the claimant engages in daily activities inconsistent with the alleged symptoms.'" *Molina*, 674 F.3d at 1112 (quoting *Lingenfelter*, 504 F.3d at 1040). The ALJ cited Dr. Knapp's opinion stating that "[t]he patient remains largely independent in basic and instrumental activities of daily living." (R. at 24 (citing

R. at 1858).) Plaintiff does not cite to any contradicting medical evidence. In sum, the ALJ did not err in evaluating Plaintiff's testimony.

**IT IS THEREFORE ORDERED** affirming the June 10, 2020 decision of the Administrative Law Judge (R. at 15–39), as upheld by the Appeals Council on March 4, 2021 (R. at 1–6).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 2nd day of March, 2023.

Honorable John J. Tuchi
United States District Judge